UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LINCOLN F. PAYNE,        ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.        ) | Case No. 1:25CV24 |
| ) | |
| NATIONAL JEWELRY & PAWN, INC. ) | |
| and THOMAS KIM a/k/a TOM KIM,   ) | |
| ) | |
| Defendants.     ) | |

ORDER AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant National Jewelry & Pawn, Inc.'s ("NJP"
or "Defendant NJP") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2)
(lack of personal jurisdiction), 12(b)(4) (insufficient process), 12(b)(5) (insufficient service of
process), and 12(b)(6) (failure to state a claim upon which relief can be granted), as well as a
Motion to Dismiss by Defendant Thomas Kim ("Mr. Kim" or "Defendant Kim") under Rule
12(b)(6).    In the Complaint, Plaintiff alleges that Mr. Kim was his manager at NJP, and that
Mr. Kim racially discriminated against him by favoring and supporting white employees, while
refusing to support Plaintiff and other African American employees, ultimately leading to
Plaintiff's termination in May 2024.  Plaintiff asserts claims against Mr. Kim for negligent
infliction of emotional distress ("NIED") and intentional infliction of emotional distress
("IIED"), and asserts claims against Defendant NJP for violations of Title VII of the Civil
Rights Act of 1964 and 42 U.S.C. § 1981, as well as wrongful termination in violation of public
policy under North Carolina law.

For the reasons stated below, the Court recommends that Defendant Kim's Motion to Dismiss be granted, and that the claims against Mr. Kim be dismissed. With respect to the claims against NJP, for the reasons set out below, the Court will allow Plaintiff a 90-day extension of time within which to effectuate service on NJP. As a result, Defendant NJP's Motion to Dismiss is premature, and will be terminated without prejudice to refiling after the time for service has expired. The Court notes, however, that even if Plaintiff properly serves Defendant NJP, Plaintiff's own Complaint appears to reflect that Defendant NJP was not his employer at the time of his termination, because another entity had purchased the business over a month prior to Plaintiff's termination. Thus, to the extent Plaintiff is raising any claims related to his termination, he appears to be suing the wrong Defendant. Therefore, the Court will allow Plaintiff up to 30 days to file an Amended Complaint, clarifying the claims and the Parties. If Plaintiff does not file an Amended Complaint, the Court will conclude that Plaintiff does not wish to pursue the claims further, and the case will be dismissed without prejudice for failure to prosecute.

I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a *pro se* action by Plaintiff Lincoln F. Payne ("Plaintiff"). Plaintiff is African American. (Compl. [Doc. #5] ¶ 13.) In July 2018, Plaintiff was hired by NJP as an assistant store manager and was later promoted to store manager. (Compl. ¶¶ 19, 26.) Sometime in 2019, Thomas Kim ("Mr. Kim") was hired by NJP as a Regional Manager for Durham (Compl. ¶¶ 9, 22.) Plaintiff alleges that he did not have a positive working relationship with Mr. Kim from the start, and that he sensed "tension and mistrust" from Mr. Kim. (Compl. ¶ 24.) Specifically, Plaintiff alleges that Mr. Kim discriminated against Plaintiff by failing to support

and train him and other African American employees, while favoring and supporting white employees. (See Compl., Doc. #5.) In April 2024, the store where Plaintiff worked was sold to First Cash, Inc. ("First Cash"), and Plaintiff and Mr. Kim were terminated as NJP employees and re-hired as First Cash employees. (See Compl. ¶¶ 15, 17; Pl. Resp. [Doc. #23] ¶ 3.) Over a month later, in May 2024, Plaintiff was terminated from his role as store manager. (Compl. ¶ 48.)

In the Complaint, Plaintiff alleges that he did not receive adequate services and support from Mr. Kim compared to white employees, and Plaintiff's Complaint sets out several incidents that he contends are examples of this alleged behavior:

- Plaintiff approached Mr. Kim about promoting another African American employee, Patrick Bodie, to assistant store manager, but Mr. Kim laughed and responded, "Patrick Bodie will never become an assistant manager." Plaintiff alleges that Mr. Bodie was subsequently transferred to another store, where he became a top seller. (Compl. ¶ 30.)

- In January 2024, Mr. Kim gave preferential treatment to a white store manager by capping the amount Plaintiff was allowed to offer a customer while allowing the white manager to offer more money for the same item. (Compl. ¶ 37.)

- In April 2024, Mr. Kim did not respond to a customer complaint about lack of professionalism in one of his stores after the customer overheard two store employees referring to another employee, an African American woman, as a "bitch" and saying that they were tired of her and could not wait to have her fired. Plaintiff alleges that Mr. Kim's "uncaring attitude" caused the employee to quit. (Compl. ¶ 45.)

- Between March and May 2024, following the sale of Plaintiff's store to First Cash, Mr. Kim visited Plaintiff's store once to train the staff on the new systems and policies, but Mr. Kim did not train the employees and instead sat in his office and grew hostile when employees asked for help or had questions. (Compl. ¶ 39.) When Plaintiff spoke to Mr. Kim and indicated that he and his staff were stressed out with

the new system and did not feel supported by Mr. Kim, Mr. Kim responded, "I don't think you and I are working out." (Compl. ¶ 41.) Plaintiff then told Mr. Kim, "I'm afraid you don't see value in black managers." (Compl. ¶ 41.)

Plaintiff also alleges that Mr. Kim's behavior set him and other African American employees "up to fail." (Compl. ¶ 43.) Specifically, Plaintiff alleges that: Mr. Kim placed Plaintiff at the worst store with the lowest chances of making money (Compl. ¶ 44); he would stop by Plaintiff's store to see if employees were doing anything illegal, and to see whether Plaintiff and his staff were following procedure (Compl. ¶ 42); he refused to fix the restrooms at Plaintiff's store when they malfunctioned, which decreased employee morale and store profitability (Compl. ¶ 34); and he refused to let Plaintiff and his staff process new jewelry and "insisted on controlling all the cleaning and pricing," which slowed down operations and made the store less efficient and less profitable (Compl. ¶ 40). Plaintiff alleges that other employees and customers observed that Mr. Kim was discriminatory towards Plaintiff and "picked on" him as if deliberately trying to find things that he had done wrong. (Compl. ¶ 43.)

Plaintiff alleges that he "repeatedly" complained to NJP's Chief Operating Officer Jeff Wilhelm ("Mr. Wilhem") that he was not getting the support he needed, including appropriate training, from Mr. Kim. (Compl. ¶ 27.) Beginning in December 2020, Plaintiff complained to Mr. Wilhelm that "he felt Mr. Kim was racist and did not value African American employees," and that he "snubbed" African American employees and would "laugh in their faces." (Compl. ¶ 30.) Plaintiff alleges that when Mr. Kim learned that Plaintiff had spoken with Mr. Wilhelm, he "further retaliated" against Plaintiff because he thought Plaintiff had "gone behind his back by complaining to upper management." (Compl. ¶ 31.) Plaintiff alleges that "[i]n retaliation for [Plaintiff's] complaints about discriminatory treatment, in October and

4

November 2023[,] Mr. Kim wrote up [Plaintiff] six times in two months for meritless, groundless accusations." (Compl. ¶ 36.) Plaintiff alleges that Mr. Wilhelm "saw the write ups and concluded they had no merit, which made Mr. Kim even more hostile toward [Plaintiff]." (Compl. ¶ 36.) In addition, Plaintiff complained to Lottie Noble-King with Human Resources about Mr. Kim's periodic visits to check for "illegal" behavior, who told Plaintiff to write everything down, but Plaintiff expressed to her that he was afraid of retaliation. (Compl. ¶ 42.)

According to the Complaint, on May 22, 2024, over a month after the business had been sold to First Cash (and Plaintiff and Mr. Kim had been terminated as NJP employees and re-hired as First Cash employees), Mr. Kim arranged a meeting with Plaintiff and someone from Human Resources, during which Mr. Kim issued Plaintiff a write-up and accused Plaintiff of causing "dissension" in the company. (Compl. ¶ 46.) Plaintiff alleges that Mr. Kim also claimed that Plaintiff did not follow procedure regarding jewelry inventory. Plaintiff disagreed with the information in the write-up, which "prompted an investigation into the allegations made by Mr. Kim." (Compl. ¶ 47.) Two days later, Mr. Kim and Dustin Paige, the Raleigh Regional Manager, told Plaintiff that he had issued a $59 "chargeback" in violation of store policy and terminated Plaintiff, telling him, "we'll go in a different direction." (Compl. ¶ 48.)

On November 26, 2024, Plaintiff filed this action in state court, asserting claims against NJP for alleged violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as well as termination in violation of public policy under North Carolina law, and against Mr.

Kim for NIED and IIED. The same day, the Durham County Clerk of Court issued a summons to NJP, which was directed to:

NATIONAL JEWELRY & PAWN, INC
SERVE: Registered Agent Robert Moulton
2334 Guess Rd.
Durham NC 27705

(Summons, Doc. #26-1 at 2.) On December 5, 2024, the summons was returned unserved, stating: "process not complete, named defendant – reg. agent sold business on 4/24 and is no longer owner or reg. agent for National Jewelry & Pawn, Inc." (Summons, Doc. #26-1 at 3.) On December 9, 2025, the Durham County Clerk of Court issued a new summons to NJP, this time directed to:

First Cash, dba National Jewelry & Pawn, INC
SERVE: Registered Agent Tom Kim
2334 Guess Rd., Durham NC 27705

(Summons, Doc. #6 at 1). On December 10, 2025, service via the second summons was accepted by "Tom Kim – Reg. agent, 2334 Guess Rd., Durham, NC." <u>Payne v. Kim et al.</u>, 24CV010824-310, Doc. #8 (Durham Cnty. Ct.). Mr. Kim was subsequently served individually on December 19, 2024, and Mr. Kim removed the case to this Court on January 9, 2025. (Petition for Removal, Doc. #1 at 1.)

A declaration filed by Defendant NJP reflects that Robert Moulton ("Mr. Moulton"), NJP's President, is the registered agent for NJP, and that Mr. Kim is not, and has never been, an officer, director, managing agent or other agent authorized by appointment or by law to accept service on behalf of NJP.[1] (Moulton Decl., Doc. #17-1, ¶¶ 9, 10.) The declaration also

---

[1] In considering issues of service, "[a] trial court may consider evidence by affidavit . . . without converting the proceeding to one for summary judgment." <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982); <u>Wilson-Cook</u>

states that although First Cash acquired the right to operate the business on Guess Road effective April 17, 2024, the Guess Road address—2334 Guess Road, Durham, NC 27705—remained the registered address for NJP on file with the Secretary of State for some period after the April 17 effective date. (Moulton Decl. ¶¶ 5, 7.) NJP's 2024 Annual Report, submitted by Plaintiff as an exhibit in opposition to NJP's Motion to Dismiss, indicates that NJP's current registered address is now 619 East Franklin St., Chapel Hill, NC 27514, Orange County. (NJP 2024 Report, Doc. #23-1 at 2, #26-1 at 1.) The declaration asserts that NJP and First Cash have never been affiliated with each other, and states there is no such legal entity as "First Cash, dba National Jewelry & Pawn, Inc." (Moulton Decl. ¶ 8.)

Based on the foregoing, Plaintiff brings five claims, three against NJP and two against Mr. Kim: (1) a claim under Title VII of the Civil Rights Act of 1964 against NJP, (2) a claim under 42 U.S.C. § 1981 against NJP, (3) a claim under North Carolina law for wrongful termination in violation of public policy against NJP, (4) a claim under North Carolina law for negligent infliction of emotional distress against Mr. Kim, and (5) a claim under North Carolina law for intentional infliction of emotional distress against Mr. Kim. Defendant Kim moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. Defendant NJP moves to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5) for purported errors related to Plaintiff's service of process on Defendant NJP, and under Rule

---

Med. Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir. 1991); Williams v. Future Foam, Inc., No. 1:24CV603, 2025 WL 1166870, at *1 (M.D.N.C. Apr. 22, 2025). The Court therefore considers Mr. Moulton's declaration in evaluating NJP's claims for dismissal, without converting its Motion to Dismiss into one for summary judgment, but only as to its contentions regarding service under 12(b)(2), 12(b)(4), and 12(b)(5), and not as to any contentions related to NJP's motion for dismissal pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.

12(b)(6) for failure to state a claim upon which relief can be granted. The Court will consider the Motions to Dismiss in turn.

II.    DISCUSSION

A.  Motion to Dismiss by Defendant Kim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678. Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

1. <u>Negligent Infliction of Emotional Distress</u>

Plaintiff first alleges that Mr. Kim acted negligently and caused Plaintiff severe emotional distress. (Compl. ¶¶ 83-85.) In his Motion to Dismiss, Defendant Kim argues that Plaintiff's claim for NIED should be dismissed because Plaintiff has only alleged intentional acts by Mr. Kim, not negligent acts, and therefore has not stated a claim for NIED. (Kim Br. [Doc. #16] at 7-10.)

"In order to state a claim for NIED, a plaintiff must allege that (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff to suffer severe emotional distress; and (3) the conduct did, in fact, cause the plaintiff to suffer severe emotional distress." <u>Horne v. Cumberland Cnty. Hosp. Sys. Inc.</u>, 228 N.C. App. 142, 148 (2013) (citing <u>Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.</u>, 327 N.C. 283, 304 (1990)).[2] With respect to the first element, "[a]llegations of intentional conduct . . . even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim." <u>Horne</u>, 228 N.C. App. at 149; <u>Bonham v. Wolf Creek Acad.</u>, 767 F. Supp. 2d 558, 573 (W.D.N.C. 2011). Thus, "'[w]hen the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, [the complaint] is insufficient to state a claim for negligent infliction of emotional distress.'" <u>Soto v. Town of Rolesville</u>, 729 F. Supp. 3d 533, 551 (E.D.N.C. 2024)

---

[2] "Included within these elements is a requirement that the defendant have committed negligence, including the failure to exercise due care 'in the performance of some legal duty owed to plaintiff.'" <u>Sheaffer v. Cnty. of Chatham</u>, 337 F. Supp. 2d 709, 733-34 (M.D.N.C. 2004) (quoting <u>Guthrie v. Conroy</u>, 152 N.C. App. 15, 25 (2002)); <u>Horne</u>, 228 N.C. App. at 148-49. "The failure to allege such a duty owed by the defendant to the plaintiff is fatal to an NIED claim on a motion to dismiss." <u>Horne</u>, 228 N.C. App. at 148-49. In this case, Plaintiff does not allege that Mr. Kim owed Plaintiff a legal duty. Thus, in addition to the reasons stated above, because it appears that there was no "'breach of duty of care, [P]laintiff's suit against [Defendant Kim] for NIED cannot be maintained.'" <u>Horne</u>, 228 N.C. App. at 149 (quoting <u>Guthrie</u>, 152 N.C. App. at 25).

(quoting Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002));

Mitchell v. Lydall, Inc., No. 93-1374, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994) (holding

that plaintiff failed to state a NIED claim where the "complaint contain[ed] merely a single,

conclusory allegation that [defendant] was negligent" and the "material factual allegations

charge[d] nothing but intentional acts by [defendant]").

Here, as Defendant Kim correctly argues, Plaintiff's allegations do not establish that

Mr. Kim engaged in any negligent conduct. While Plaintiff's Complaint makes a single,

conclusory allegation that Mr. Kim "behaved negligently" (Compl. ¶ 84), all of Plaintiff's

factual allegations describe intentional acts by Mr. Kim: Plaintiff alleges that Mr. Kim

discriminated against Plaintiff and other African American employees by refusing to help train

them or provide adequate support; made condescending comments to Plaintiff and other

African American employees; gave preferential treatment to white employees; and engaged in

behavior that reduced the profitability of Plaintiff's store, including refusing to get the

bathrooms fixed and insisting on controlling pricing. These allegations all illustrate intentional

acts by Mr. Kim, not negligent ones, and thus cannot serve as the basis for an NIED claim.

See, e.g., Soto, 729 F. Supp. 3d at 551; Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d

627, 637 (M.D.N.C. 2000) (dismissing claims for negligent infliction of emotional distress

because plaintiff alleged discriminatory conduct, which is "inherently intentional" (citing

Mitchell, 1994 WL 38703, at *3-4)).

### 2. Intentional Infliction of Emotional Distress

Plaintiff also brings a claim against Mr. Kim for intentional infliction of emotional

distress. (Compl. ¶ 88.) In his Motion to Dismiss, Defendant Kim argues that Plaintiff has

not stated a claim for IIED because Mr. Kim's conduct as alleged by Plaintiff does not amount to "extreme and outrageous" conduct. (Kim Br. at 10-12.) To state a claim for IIED, a plaintiff must show "'1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" Sheaffer v. Cnty. of Chatham, 337 F. Supp. 2d 709, 732 (M.D.N.C. 2004) (quoting Waddle v. Sparks, 331 N.C. 73, 82 (1992)). "Conduct is extreme and outrageous only when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Sheaffer, 337 F. Supp. 2d at 732 (quoting Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493 (1986)). Liability for IIED "clearly does not extend to mere insults, indignities, [and] threats." Wagoner v. Elkin City Schs. Bd. of Edu., 113 N.C. App. 579, 586 (1994) (quotation omitted). "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress." Thomas, 157 F. Supp. 2d at 634-35; Sheaffer, 337 F. Supp. 2d at 732; Jackson v. Blue Dolphin Commc'ns of N.C., LLC, 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002) ("North Carolina courts have been particularly hesitant in finding intentional infliction of emotional distress claims actionable within an employment claim."); Soto, 729 F. Supp. 3d at 550-51 (collecting cases). Whether alleged conduct is sufficiently serious to state a claim for intentional infliction of emotional distress is a question of law. Thomas, 157 F. Supp. 2d at 635.

In this case, Plaintiff has not alleged conduct by Mr. Kim that was extreme and outrageous under this standard. Here, as noted above, Plaintiff alleges that Mr. Kim refused to train and supervise African American employees; took steps to jeopardize the profitability

and success of Plaintiff and his store; favored white employees; and retaliated against Plaintiff when he reported his concerns to management. This behavior, while disrespectful and distasteful if true, does not "go beyond all possible bounds of decency" so as to be "regarded as atrocious" or "utterly intolerable." See Sheaffer, 337 F. Supp. 2d at 732; Thomas, 157 F. Supp. 2d at 635 (finding that African American plaintiff's allegations that defendant (1) gave her an excessive workload compared to her co-workers; (2) required that she receive supervisor permission to attend physical therapy while allowing white employees to attend therapy whenever they wanted; (3) failed to complete paperwork on time causing plaintiff to lose her disability payments; (4) created a hostile work environment; and (5) discharged her in retaliation for exercising her rights under Title VII to be "deplorable if committed" but not "extreme and outrageous" under North Carolina law); Pardasani v. Rack Room Shoes, Inc., 912 F. Supp. 187, 192 (M.D.N.C. 1996) ("Plaintiff has alleged that he was given poor performance evaluations, not given promotions which were given to others, excluded from training and finally terminated from his employment. Assuming these allegation[s] to be true, these actions do not rise to the level sufficient to exceed all bounds usually tolerated by decent society."); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 545 (E.D.N.C. 2008) (finding plaintiff's allegations that defendant refused plaintiff's requests for additional training, failed to place her on a mentoring status, retaliated against her for complaining against alleged race discrimination, and terminated her employment due to her age, race, and sex did not amount to extreme or outrageous conduct as a matter of law); Jackson, 226 F. Supp. 2d at 794 (making racially discriminatory statements and terminating employee in violation of federal law may be "intemperate" but does not rise to the level of extreme and outrageous conduct);

Hogan, 79 N.C. App. at 490-94 (finding that coworker's conduct was not extreme or outrageous where coworker screamed and shouted at plaintiff, called her names, interfered with her work, and threw a menu at her).

In sum, none of the conduct Plaintiff alleges amounts to extreme and outrageous conduct as a matter of law. "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress" under North Carolina law, Thomas, 157 F. Supp. 2d at 635, and Plaintiff's allegations do not establish this as one of those rare cases. The Court therefore finds that Plaintiff has failed as a matter of law to allege misconduct by Defendant Kim sufficient to sustain a claim for intentional infliction of emotional distress.

As a result, Defendant Kim's Motion to Dismiss should be granted, and all of the claims against Defendant Kim should be dismissed.

B.  Motion to Dismiss by Defendant NJP

Defendant NJP moves to dismiss first based on deficient process and insufficient service of process. In support of the Motion to Dismiss, NJP contends that Plaintiff served Mr. Kim, who, at the time of service, was neither an employee of NJP, nor an officer, managing agent, general agent, or agent of any kind capable of accepting service. (NJP Br. [Doc. #18] at 11.) On this basis, Defendant NJP moves to dismiss because (1) Plaintiff's summons listing Mr. Kim was not addressed to a proper individual able to receive service for NJP and was therefore a deficient form of process under Rule 12(b)(4), (2) Plaintiff's service of the summons on Mr. Kim thus was not a sufficient service of process under Rule 12(b)(5), and

13

(3) these defects in process and service mean that Plaintiff has not established personal jurisdiction over Defendant NJP under Rule 12(b)(2).

Under Rules 12(b)(4) and 12(b)(5), a defendant may seek dismissal for insufficient process and insufficient service of process, respectively. Fed. R. Civ. P. 12(b)(4), (5).

> A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or 'form' of the process itself, and a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of 'service' of process. Stated differently, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery. For example, a typical Rule 12(b)(4) challenge alleges that the entity named in the summons is different from the entity named in the complaint. A typical rule 12(b)(5) challenge alleges that the process was delivered by a person incapable of serving process (e.g., a party), to a person or entity incapable of receiving service (e.g., a minor), or that the service was delivered in an improper way (e.g., via first-class mail).

Graham v. Anderson, No. 5:23-CV-30, 2023 WL 3910250, at *3 (E.D.N.C. June 8, 2023) (internal citations omitted). When a defendant moves to dismiss under Rule 12(b)(4) or 12(b)(5), the plaintiff bears the burden of establishing that process was sufficient and that service of process was valid. Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003).

Under Rule 12(b)(2), a defendant may seek dismissal of a complaint because the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998); Chrisp v. Univ. of North Carolina-Chapel Hill, 471 F. Supp. 3d 713, 716 (M.D.N.C. 2010). Actual notice of a lawsuit is insufficient to confer jurisdiction over a defendant. Williams v. Future Foam, Inc., No. 1:24CV603, 2025 WL 1166870, at *3 (M.D.N.C. Apr. 22, 2025).

The Federal Rules of Civil Procedure provide that a corporation may be served by delivering a copy of the summons and the complaint to an officer, managing or general agent, or other agent authorized by appointment or by law to receive service of process, Fed. R. Civ. P. 4(h)(1), or by following state law for serving summonses, Fed. R. Civ. P. 4(e)(1). North Carolina law permits service upon a domestic or foreign corporation in the following ways:

> a. By delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office.
>
> b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.
>
> c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served as specified in paragraphs a and b.
>
> d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the officer, director, or agent to be served as specified in paragraphs a. and b., delivering to the addressee, and obtaining a delivery receipt.

N.C. Gen. Stat. § 1A-1, Rule 4(j)(6).

In this case, the Court agrees that there were defects in process under Rules 12(b)(4) and 12(b)(5). It appears that the summons that was accepted as "service" on NJP was directed to "First Cash, dba National Jewelry & Pawn, INC.," (Summons, Doc. #6 at 1), an entity other than NJP and that Defendant NJP contends does not exist, and was directed to Mr. Kim as the "Registered Agent," although Mr. Kim was not an employee of NJP at the time, nor was he an officer, director, managing agent or agent authorized by appointment or law to accept service for NJP. (Moulton Decl. ¶ 9.) See, e.g., May v. Martin Fein Interest Ltd., No. 5:21-

15

CV-83, 2022 WL 1597820, at *5 (E.D.N.C. May 19, 2022) (collecting cases) (finding that "service was not addressed to the officer, director, or agent to be served" and that "[f]ailure to name that agent or even attempt to name an agent violates a plain requirement of Rule 4 and is more than a technical defect"); Graham, 2023 WL 3910250, at *5 ("[Plaintiff] failed to designate in his summons any of the parties authorized by [the North Carolina Rules of Civil Procedure or Federal Rules of Civil Procedure] to accept service on behalf of a corporation. Accordingly, the summons was 'defective' on its face."); Radefeld v. WakeMed, No. 5:23-CV-379, 2023 WL 6368332, at *2 (E.D.N.C. Sept. 6, 2023) ("The summons is deficient because it fails to designate any of the parties authorized in the Rules to accept service on behalf of a corporation."). In addition, as explained, because Mr. Kim accepted service on behalf of NJP but he was not authorized to do so under North Carolina law, there was insufficient service of process on NJP under Rule 12(b)(5).

Although it appears that there were defects in Plaintiff's service under Rules 12(b)(4) and 12(b)(5), the Court notes that cases should be resolved on the substance rather than procedural deficiencies, particularly in the types of circumstances presented here. Therefore, for the reasons set out below, the Court will grant Plaintiff an extension of time within which to serve NJP.

Under 28 U.S.C. § 1448, in any case removed to federal court "in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. Under the Federal Rules of Civil Procedure, a

16

defendant must be served within ninety days.  Fed. R. Civ. P. 4(m).  Rule 4(m) further provides

that, if a defendant is not served within ninety days, the Court must either dismiss the action

without prejudice or "order that service be made within a specified time," and, for good cause

shown, the Court "must extend the time for service for an appropriate period."  Fed. R. Civ.

P. 4(m).  Thus, "under Rule 4(m), a district court possesses discretion to grant the plaintiff an

extension of time to serve a defendant with the complaint and summons even absent a

showing of good cause by the plaintiff for failing to serve the defendant during the 90-day

period provided by the Rule. And if the plaintiff is able to show good cause for the failure,

then the court *must* grant the extension."  <u>Gelin v. Shuman</u>, 35 F.4th 212, 220 (4th Cir. 2022)

(emphasis in original).

Here, the Court finds that good cause exists to grant an extension of time for Plaintiff

to serve NJP, and further finds that even if good cause were not shown, the Court in its

discretion would extend the time for service under Rule 4(m).  First, it appears that at least

part, if not all, of the delay in service was outside Plaintiff's control: as noted above, Plaintiff's

first summons to NJP, which was returned as unserved, was properly directed to NJP's

registered agent, Robert Moulton, and seemingly to NJP's registered address at the time.

(Summons, Doc. #26-1 at 2-3; Moulton Decl. ¶¶ 7, 10.)  Thus, it appears that Plaintiff's first

summons may not have been defective, although it was returned as unserved and incorrectly

indicated that Mr. Moulton was no longer NJP's registered agent.  (Summons, Doc. #26-1 at

2.)  In addition, although Plaintiff's second summons was facially deficient, Mr. Kim

improperly accepted service on behalf of NJP, so Plaintiff reasonably believed—likely until

NJP filed its Motion to Dismiss—that he had properly served NJP.  Thus, it appears that at

least part of the delay in service was not due to Plaintiff's error and was out of his control. In addition, Plaintiff made diligent efforts to serve NJP, promptly issuing two summonses to NJP and, as demonstrated through Plaintiff's briefing and accompanying exhibits, diligently attempting to identify the proper party to serve and the proper address at which to serve him. Finally, Plaintiff is proceeding *pro se*, and it does not appear that Defendant NJP would be substantially prejudiced by an extension of time for Plaintiff to effect service, <u>May</u>, 2022 WL 1597820, at *8 (finding "no prejudice to the defendant beyond the inherent prejudice in having to defend the suit" (quotation omitted)). In sum, good cause exists to extend the time within which to allow Plaintiff to serve NJP, and even if good cause had not been established, the Court in its discretion would extend the time for service under Rule 4(m).

In the interest of efficiency and to avoid unnecessary expense and delay, the Court will direct counsel for Defendant NJP to file a Notice identifying an appropriate individual and address for service.[3] Alternatively, counsel for NJP may agree to accept service on behalf of Defendant NJP, or waive service pursuant to Rule 4(d).

Because the Court will grant Plaintiff an extension of time to properly effect service in this case, Defendant NJP's Motion to Dismiss is largely rendered moot. Thus, the Court will

---

[3] Based on the information in the briefing, it appears that service should be directed to:

> National Jewelry & Pawn, Inc.
> President Robert Moulton,
> 619 East Franklin St.,
> Chapel Hill, NC 27514, Orange County.

However, counsel for Defendant NJP can confirm whether this is correct.

18

terminate Defendant NJP's Motion to Dismiss as moot without prejudice to Defendant NJP re-filing the Motion to Dismiss after the time for service has run.[4]

The Court notes, however, that Plaintiff's claims against NJP appear to be based primarily, if not completely, on his termination in May 2024 and the events immediately leading up to that termination. However, Plaintiff also agrees that when NJP sold the business to First Cash in April 2024, Plaintiff, Mr. Kim, and the other employees were all terminated as NJP employees and re-hired as First Cash employees. (Pl. Resp. ¶ 3 ("Employees of National Jewelry & Pawn had been terminated from said Company and had to be re-hired by the new owner (First Cash). . . . All the employees at Plaintiff's store and Plaintiff knew their employer as 'First Cash.'").) Plaintiff has not presented a basis for holding his former employer, NJP, liable for the decision by First Cash to terminate him. Thus, it appears that Plaintiff has sued the wrong employer. If Plaintiff does intend to bring some claim against NJP, unrelated to his termination, he should clarify the basis for the claim. If he instead intends to bring claims against First Cash related to his termination by First Cash, he should name First Cash as a Defendant instead.[5] Therefore, the Court will allow Plaintiff 30 days to file an Amended Complaint clarifying the basis of the claims and the parties.

Finally, the Court notes that it may be that Plaintiff no longer wishes to pursue this action. Therefore, if Plaintiff fails to file an Amended Complaint within 30 days, the Court

---

[4] The Court notes that some of the issues raised by Defendant NJP may be affirmative defenses that could not be clearly resolved based on Plaintiff's allegations in the Complaint, and may be more appropriate to raise or address on a motion for summary judgment. These issues can be considered further after service is made, if Defendant NJP elects to file a Motion to Dismiss or Motion for Summary Judgment after it has been served.

[5] There may be issues with regard to timeliness and statutes of limitation, and whether any such amendment would relate back under Rule 15, and the Court can consider those issues on appropriate motions if Plaintiff adds or substitutes First Cash as a party.

will assume that he no longer wishes to pursue this action, and will recommend that the case be dismissed without process for failure to prosecute.

III.    CONCLUSION

IT IS THEREFORE RECOMMENDED that the Motion to Dismiss by Defendant Kim [Doc. #15] be GRANTED, and that the claims against Mr. Kim be dismissed without prejudice.

IT IS ORDERED that pursuant to Rule 4(m), Plaintiff has until October 27, 2025, in which to effect proper service on Defendant NJP.

IT IS FURTHER ORDERED that Plaintiff has 30 days, until August 27, 2025, to file an Amended Complaint clarifying the basis of the claims and the parties, as noted herein.  If Plaintiff fails to file an Amended Complaint within 30 days, the Court will assume that he no longer wishes to pursue this action, and will recommend that the case be dismissed without prejudice for failure to prosecute.

IT IS FURTHER ORDERED that if Plaintiff files an Amended Complaint that asserts claims against NJP, within 14 days thereafter counsel for NJP must either file a Notice identifying an appropriate individual and address for service, or alternatively agree to accept service on behalf of NJP,  or waive service under Rule 4(d).

IT IS FURTHER ORDERED that NJP's Motion to Dismiss [Doc. #17] is terminated as moot, without prejudice to Defendant NJP re-filing after service is effected.

This, the 28th day of July, 2025.

Joi Elizabeth Peake
United States Magistrate Judge